UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRENT M. HOUSTON,

                              Petitioner,

-vs-                                                    Case No.  8:05-cv-1419-T-17MAP

SECRETARY,   DEPARTMENT   OF
CORRECTIONS,

                              Respondent.

_____

## ORDER

     THIS CAUSE is before the Court on Petitioner Houston's 28 U.S.C. § 2254 amended

petition for writ of habeas corpus (Doc. No. 6).  Respondent filed a response (Doc. No. 14) and

Houston filed a reply (Doc. No. 19).  Houston challenges his conviction and sentence entered

by the Circuit Court for the Twelfth Judicial Circuit, Manatee County, Florida.

## PROCEDURAL HISTORY

     On July 31, 2000, Houston was charged by Second Amended Information with one count

of Aggravated Battery on a Person Over 65 Years of Age and one count of Attempted Robbery.

(Vol. 1: R 52- 53).[1]  The case proceeded to a jury trial on October 25, 2001. Houston was

---

[1] Respondent filed the five-volume record on direct appeal as Respondent's Exhibit 17. References
to the documents and pleadings found in Volume 1 of the record utilize the letter "R," followed by the page
number located in the lower right hand corner of the page. The trial transcript is contained in Volumes 2
through 4, and is paginated separately in the upper right hand corner of the page, numbering from 1 to 419.

represented by court-appointed counsel. (Vol. 1: R 56). The jury returned a verdict of guilty as charged on both counts. (Vol. 1: T 104-105).  On October 26, 2001, Houston was sentenced to thirty years imprisonment as a Prison Releasee Reoffender (PRR) on the aggravated battery charge, and five years concurrent on the attempted robbery charge. (Vol. 1:  R 121-129).

Houston appealed, raising one issue: WHETHER THE TRIAL COURT ERRED IN ALLOWING THE HEARSAY STATEMENTS FROM MS. MYERS INTO EVIDENCE?   On November 13, 2002, state district court of appeal per curiam affirmed Houston's convictions and sentences. (Exhibit 3). *Houston v. State*, 835 So. 2d 1125 (Fla. 2d DCA 2002)[Table].

On November 12, 2003, Houston filed a pro se motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850. (Exhibit 5). His motion raised nine claims, including six allegations of ineffective assistance of trial counsel. On January 12, 2004, the state trial court summarily denied all grounds. (Exhibit 6). Houston appealed the court's order denying Rule 3.850 relief. (Exhibit 7). On July 28, 2004, in Case No. 2D04-715, the state district court of appeal per curiam affirmed the state trial court's denial of postconviction relief. (Exhibit 9). *Houston v. State*, 2004 Fla. App. LEXIS 11252 (Fla. 2d DCA 2004)[Table]. Houston filed a motion for rehearing (Exhibit 10), which the appellate court denied on September 1, 2004. (Exhibit 11). The court issued the mandate on October 25, 2004. (Exhibit 12).

On September 24, 2004, in Case No. 2D05-1120, Houston filed in the state district court of appeal a petition alleging ineffective assistance of appellate counsel on direct appeal. (Exhibit 13). Houston alleged his appellate counsel was ineffective for failing to argue in the initial brief that the trial court erred by entering a judgment of conviction which mistakenly listed Count II as being a second degree felony when it was a third-degree felony.  As directed by the appellate court, the State filed a response to the petition for writ of habeas corpus on April 14,

2

2005. (Exhibit 14). Houston later filed a reply to the State's response. (Exhibit 15). On July 8, 2005, the state district court of appeal filed an order denying the petition, but directing the state trial court to correct the judgment to reflect that the attempted robbery conviction was for a third-degree felony. (Exhibit 16). *Houston v. State*, 907 So. 2d 527 (Fla. 2d DCA 2005).

### THE PRESENT PETITION

Houston signed his original federal petition on July 28 8, 2005. (Doc No. 1). The amended petition was filed on August 19, 2005.  The petition is timely.

### STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

### Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id.*  However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

## DISCUSSION

A review of the record demonstrates that, for the following reasons, Houston's petition for writ of habeas corpus must be **denied.**

## Ground One

Houston alleges trial counsel was ineffective for misinforming Houston about the penalty he faced if he went to trial versus accepting the State's plea agreement. Houston raised this claim in his motion for postconviction relief in state court. The state trial court addressed the specific allegations in the motion, in which Houston claimed his counsel "related to [him] a plea agreement sentence of statutory maximum 30 years." Houston further alleged that he told his attorney "he didn't do it and requested to go to trial." Houston "figured if he was going to get the statutory maximum anyway he might as well go to trial and hope for better." In the postconviction motion, Houston argued that counsel misled him by not telling him that the State was seeking to sentence him as a Prison Releasee Reoffender (PRR) if he went to trial. Houston claimed in state court, as he does in the present federal petition, that he would have taken the plea offer of "30 years," which would have resulted in a lesser sentence because he would have at least been able to earn gain time if not designated as a PRR. (See § 2254 petition at p. 5). The state trial court's denial of this claim is objectively reasonable:

> Defendant's claim is without merit. First, the Defendant provides no evidence that any plea offer was ever made by the State in this case. Even assuming that such an offer was made, however, the Defendant admits in his present motion, he told counsel he was not guilty and wanted to go to trial. Therefore, the Court does not find that the Defendant was prejudiced by his failure to accept a plea bargain.

Moreover, Defendant's counsel had been noticed by the State that it would seek to have the Defendant sentenced under the PRR statute on September 5, 2000, a mere five days after the Information was filed in this case and more than one year before this matter went to trial. The Defendant assumes in his statement that the State offered him a deal of 30 years that this sentence would not have been as a PRR even *after* the State had placed him on notice that it intended to ask the Court to sentence him as a PRR. Again, however, no such indication appears in the Court's file, nor does the Defendant attach any documentation to his motion that would allow this Court to presume that the State was going to forego asking the Court to sentence the Defendant as a PRR.

In the context of entering a plea, gain time has been noted to be a collateral consequence of the plea. *See e.g., Stansel v. State*, 825 So. 2d 1007 (Fla. 2d DCA 2002). In the absence of any clear proof from the Defendant of a plea offer, much less a plea offer that did not include sentencing as a PRR when it is clear the Defendant qualified for sentencing as such [footnote omitted], and in conjunction with the Defendant's earlier assertion that "he didn't do it" and wanted to proceed to trial to establish his innocence, this Court does not find that counsel's alleged failure to tell the Defendant that he would have to serve 100% of a PRR sentence to be prejudicial. The PRR Act did not increase the maximum statutory sentence of thirty years, of which the Defendant was already aware. *See Sheffield v. State*, 789 So. 2d 340 (Fla. 2001).

(Order denying relief at pp. 2-3).

The state court's rejection of this claim was reasonable. First, as noted by the postconviction court, Houston has not demonstrated there was a plea offer by the State, "much less a plea offer that did not include sentencing as a PRR..." *See Moss v. United States*, 323 F.3d 445, 467 (6th Cir. 2003) (petitioner must demonstrate that the government was willing to accept or extend an invitation to plea negotiations). Moreover, even if Houston is correct that the State offered a thirty-year sentence in exchange for a plea, and such offer did not include sentencing as a Prison Releasee Reoffender, trial counsel's alleged failure to advise Houston of the difference between the two sentencing consequences was not "gross misadvice," because it is not known whether Houston would have been entitled to gain time and if so, how the award of any gain time would have affected his sentence. *See United States v. Gordon*, 156

F.3d 376, 379-81 (2d Cir. 1998) (recognizing ineffective assistance claim where counsel's gross misadvice regarding potential sentencing exposure caused defendant to reject plea offer). Houston's self-serving after-the-fact statement that he would have accepted the State's offer but for counsel's deficient advice, is alone insufficient to establish prejudice under the Strickland test. *See Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) (Given appellant's awareness of the plea offer, his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer). This is especially true in this case in light of Houston's admission in his Rule 3.850 motion that he told his attorney that he "maintained his innocence" and Houston "didn't do it and requested to go to trial." (Exhibit 5 at p. 7). Under these circumstances, Houston has not established that trial counsel's performance was deficient or that Houston was prejudiced by counsel's alleged action or omission.      Ground one does not warrant habeas corpus relief.

Ground Two

Houston contends trial counsel was ineffective for failing to investigate and interview witnesses who would have given an exculpatory alibi. Specifically, Houston refers to Kathy Bettle, Hank Gergewicz, Denis Gilpin, and an unidentified representative from the Department of Motor Vehicles. This claim was raised in the Rule 3.850 motion as ground two. The state trial court made the following findings of fact and conclusions of law in its order denying relief:

> **Ground Two**: Defendant claims counsel was ineffective for not investigating and interviewing witnesses that would have provided him with an exculpatory alibi. Specifically, Defendant complains that counsel failed to call as witnesses: Kathy Bettle, Hank Gergowicz, Dennis Gilpin, and the Department of Motor Vehicles. Defendant claims that counsel's failure to investigate and call these witnesses prejudiced him at trial because it left his alibi story uncorroborated. He avers that counsel told him he could not locate these

6

witnesses.

Bettle and "Gergow" were listed on the Defendant's List of Witnesses filed with the Court on September 20, 2001. On the Defendant's Notice of Alibi, however, only Solomon Harvey and Sara Golfin were listed as witnesses.

Regardless of whether counsel could or could not locate Bettle, Gergowicz or Gilpin as witnesses, however, the Defendant has failed to establish how the lack of their testimony at trial prejudiced him. These three witnesses could have corroborated the Defendant's testimony that on the morning of the day the crime was committed, he went to Workforce, a temporary labor agency, and was assigned to a fire station site where he worked for 4-1/2 hours that day. (T.T. 298-300) Bettle was the dispatcher at Workforce who sent Houston and Dennis Gilpin to the same job. (T.T. 301) Gergowicz was the job supervisor who signed both workers' time sheet; this sheet was introduced during the Defendant's testimony without objection from the State. (T.T. 300-301)

Defendant contends that these witnesses could have established an alibi for him because witness, Sandra Pate, testified at trial that she had seen the Defendant at the victim's house in the morning of August 8, 2000, the date the crimes were committed. (T.T. 64-65) Nonetheless, her description of the events *i.e.*, seeing the Defendant flee from the victim's residence, rushing to the victim's house, going next door to get the key from Rosa McNeil, and discovering the victim with Rosa and Bernard match up with the description of events given by Rosa McNeil and Dorothy Epps. (T.T. 66-70)

Ms. Epps, a neighbor of the victim, testified she saw a black male, wearing a green shirt and blue dungarees run by her house. (T.T. 75-76) Because he seemed suspicious, she went to check on the victim and saw her lying on the floor of her front room. (T.T. 77) As the front door was locked, she ran over to Rosa's house to get the key; she and Rosa returned to the victim's house and opened the door. (T.T. 77-78)

Rosa McNeil testified she saw the victim in the afternoon after Ms. Epps banged on her door and said something might have happened to Miss Mamie. (T.T. 82) She ran to the victim's house, observed her, ran back to get her keys, and ran back to the victim's house and opened the door. (T.T. 82-84) She testified that they found the victim at about 6:30 p.m. (T.T. 92) This time frame was later verified by Officer Dwayne Kauffman of the Palmetto Police Department, who testified that he was dispatched to the victim's residence at 6:31 p.m. (T.T. 99) In his opinion, the assault had taken place shortly before he arrived. (T.T. 118)

As established at trial, the victim was discovered somewhere around 6:30 p.m. in the evening, not the morning. Consequently, the Defendant fails to show

how he was prejudiced by the failure to call Bettle, Gilpin and Gergowicz as witnesses. These witnesses could have testified only as to the Defendant's whereabouts in the morning of August 8, 2000. The Defendant's testimony, coupled with the Workforce time sheet introduced during his testimony, accomplished the same end. Their testimony would not have established an alibi for the Defendant given the late afternoon timing of the crime.

Instead, counsel called Solomon Harvey as an alibi witness in an attempt to put the Defendant in Bradenton at the Harvey house at the time the crime was allegedly committed. (T.T. 281-294) Sara Golfin, the Defendant's grandmother, also testified on cross-examination that she had taken the Defendant to Helen Warner's house in Bradenton in the late afternoon on the day of the crime. (T.T. 146-148) In light of the time frame of the crime as established at trial, counsel was not deficient in failing to call Bettle, Gilpin and Gergowicz and, instead calling Harvey as an alibi witness.

Likewise, the Defendant has failed to establish any prejudice from counsel's failure to call someone from the DMV to testify. The driver's license issue has little to do with the Defendant's alibi, but had an impact on the credibility of both the Defendant and his grandmother (Sara Golfin) at trial. Defendant claimed he lost his license approximately two weeks prior to the crime; he claimed his grandmother had taken him to the local DMV office to get a new license, but they would not issue him one because he did not have a social security card. (T.T. 301-302, 313-316) Ms. Golfin corroborated this testimony, stating she had taken him the DMV sometime before the crime occurred, although she could not remember when. (T.T. 326-329)

After the commission of the crime, clothing matching the description by Pate and Epps of the clothing worn by the assailant, as well as a black nylon wallet containing the Defendant's driver's license were recovered by detectives when they searched a heavily overgrown area in between the victim's house and Golfin's house where the Defendant was residing at the time of the crimes. (T.T. 162-188) Defendant testified that on the afternoon of the crime he was stopped by a Manatee County Sheriff's deputy for a vehicle infraction. (T.T. 320-321) He claimed he did not have his license, but the officer "ran" his license, saw it was "good," and let him go. (T.T. 321) To refute this testimony, the State called Deputy Charles Elsenheimer as a rebuttal witness; he testified that when he stopped the Defendant on August 8, 2000, the Defendant had, in fact, produced his driver's license. (T.T. 339-349)

The issue of the driver's license was primarily related to credibility issues. Defendant claims that a DMV employee could have testified that he made an unsuccessful application to get a new license before the date of the crime, thus bolstering his story that he had lost his license before the crime. Nonetheless, the Defendant has failed to demonstrate that counsel's failure to call someone from

the DMV was prejudicial to his case. The State still had Elsenheimer as a rebuttal witness to refute Defendant's testimony about the license and a wealth of other incriminating evidence. (*See also* discussion regarding the evidence under Ground Five below)

(Order denying relief at pp. 3-7).

The state trial court's rejection of Houston's ineffective assistance of counsel claim constitutes a decision that was neither contrary to, nor an unreasonable application of, the *Strickland* two-part test.

Ground two does not warrant habeas corpus relief.

## Ground Three

Houston alleges trial counsel was ineffective for failing to advise Houston that he had the right to be present at essential stages of his proceedings, thereby depriving him of due process. In the state postconviction motion, Houston cited Florida Rule of Criminal Procedure 3.190(j) to support his allegation that he should have been in attendance at any pretrial depositions so that he could have assisted counsel in questioning the witnesses. The state court reasonably rejected this claim, for the following reasons:

> None of the depositions in this case were taken for the purpose of perpetuating testimony to be introduced at trial, nor has the Defendant alleged that this was the purpose for the depositions taken in this case. Therefore, Rule 3.190(j) does not apply and does not form the basis for an ineffective assistance claim. Under the general rule of criminal discovery (Fla. R. Crim. P. 3.220), the Defendant clearly had no unconditional right to be physically present during the taking of the discovery depositions in his case. *See* Fla. R. Crim. P. 3.220(h)(7).

(Order denying relief at p. 7).

The state trial court's decision was objectively reasonable. Florida's discovery rule, as it relates to pretrial discovery depositions, provides as follows:

> (7) *Defendant's Physical Presence.* -- A defendant shall not be physically present at a deposition except on stipulation of the parties or as provided by this

rule. The court may order the physical presence of the defendant on a showing of good cause. The court may consider (A) the need for the physical presence of the defendant to obtain effective discovery, (B) the intimidating effect of the defendant's presence on the witness, if any, (C) any cost or inconvenience which may result, and (D) any alternative electronic or audio/visual means available.

Fla. R. Crim. P. 3.220(h)(7).

The state court's denial of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, the *Strickland* standard, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Ground three does not warrant habeas corpus relief.

### Ground Four

Houston alleges the trial court erred in not allowing Houston to act as co-counsel. This claim is procedurally barred, because it was not raised on direct appeal, and is not cognizable in a collateral motion for postconviction relief. This is an issue that should have been raised in the Defendant's direct appeal, if at all. "Issues that could have been, but were not, raised on direct appeal are not cognizable through collateral attack." *Harvey v. Dugger*, 656 So.2d 1253, 1256 (Fla. 1995). Postconviction proceedings under rule 3.850 are not to be used as a second appeal. *See Torres-Arboledo v. Dugger*, 636 So. 2d 1321, 1323 (Fla. 1994). Pursuant to well-established case law, the Defendant cannot raise this issue in a postconviction motion. (Order denying relief at p. 8).

Houston's failure to present properly present this issue to the state trial court results in a procedural bar of the claim. To avoid a procedural default, a petitioner must present his claims to the state courts in a procedurally correct manner. *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995). The procedurally correct manner for preserving claims of error that

10

occurred during trial is to initially assert the error at the trial level and then raise the alleged error on direct appeal. "In order to preserve an issue for appellate review, the specific legal argument or ground upon which it is based must be presented to the trial court." *Bertolotti v. Dugger*, 514 So. 2d 1095, 1096 (Fla. 1987). *See Occhicone v. State*, 570 So. 2d 902, 906 (Fla. 1990).

The federal court must dismiss those claims or portions of claims that either have been explicitly ruled procedurally barred by the highest state court considering the claims, or are not exhausted but would clearly be barred if the petitioner returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). *See also, Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993)(Federal courts may not address claims that have not been presented in state court if the state court would have found the claims to be procedurally defaulted).

Claims that are unexhausted and procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or by establishing the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent" contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Cause must ordinarily be something external to the defense, *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995), and allegations of cause are subject to default. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)(ineffective assistance of counsel claim asserted as cause for procedural default of another federal claim could itself be procedurally defaulted). In addition, Houston does not meet the prejudice or fundamental miscarriage of justice exceptions to lift the state procedural bar. He does not suggest the existence of new and reliable evidence of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Absent a showing of cause and prejudice, federal habeas courts may not reach the merits of "*procedurally defaulted* claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992)(emphasis in original)(citing *Murray v. Carrier*, 477 U.S. 478 (1986)). *See also, Kight v. Dugger*, 50 F.3d 1539, 1543 (11th Cir. 1995)(A federal habeas court should not even discuss the merits of a claim that has been procedurally defaulted in state court). Houston failed to present this claim to the state courts in a procedurally correct manner so as to necessitate review on the merits, and it is too late for him to obtain such review. Therefore, the claim presented in this federal petition is procedurally defaulted.

Even if Ground four were not procedurally barred, however, Houston would not be entitled to relief. As the Supreme Court has said, a pro se defendant "does not have a constitutional right to choreograph special appearances by counsel." *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984). Moreover, the Sixth Amendment does not require a trial court to allow hybrid representation in which the defendant and his attorney essentially serve as co-counsel. *Id.*

Ground four does not warrant habeas corpus relief.

Ground Five

Houston complains his trial counsel was ineffective for failing to investigate a telephone call Houston allegedly made to his girlfriend from his friend Solomon Harvey's house at the time of the crime. The state postconviction court made the following findings in denying this claim:

> **Ground Five**: Defendant claims counsel was ineffective for failing to investigate a telephone call he allegedly made to his girlfriend from his friend's house at the time of the alleged crime. Defendant avers he "told his counsel when he was at his friend's house (Solomon Harvey) and made a phone call to his girlfriend at the time the alleged crime had occurred." (Motion at p. 11). He

contends that a phone bill showing a call made from one address to another address at or near the time of the crime would have been exculpatory and would have changed the outcome of his trial.

If, as the Defendant alleges, he had made a telephone call to his girlfriend at or near the time of the crime, he failed to testify about it himself at trial. Instead, he testified that his grandmother took him to his aunt's house in Bradenton. (T.T. 308) He said Solomon Harvey was there when he arrived and, "I told them Josephine was supposed to have come to pick me up from there. I went to the refrigerator and got some Hawaiian fruit punch in the can. We're sitting there and he's watching television and I'm waiting there for my girlfriend to come pick me up." (T.T. 308) Solomon Harvey was never asked whether or not the Defendant made a call to his girlfriend during the time period he was at the Harvey house and, notably, the Defendant does not allege in his Motion that counsel was ineffective for failing to call his girlfriend to testify to this alleged fact.

Nevertheless, even if the Court were to accept the Defendant's contention that he made a telephone call to his girlfriend in order to bolster his alibi, it would not negate the other overwhelming evidence of his guilt in this case, including but not limited to:

> (1) Sandra Pate's testimony that she saw the Defendant, clad in a green T-shirt and blue pants, at the victim's front window, saw him enter the victim's house and later leave. (T.T. 47-48)

> (2) Dorothy Epps' testimony that she saw a black male, wearing a green shirt and jeans, hurry by her house, coming from the direction of the victim's residence, and her observation of the bent-up screen on the victim's front window. (T.T. 75-77)

> (3) The testimony of Sergeant Mike Stinson who, along with Detective Jerome Waiters, discovered jeans and a green T-shirt, a black nylon wallet, containing the Defendant's driver's license, and a pair of socks in an area between the victim's house and Ms. Golfin's house. In the pocket of the jeans, the officers discovered a car key, which was later found to work in the doors and trunk of the Defendant's vehicle. (T.T. 162-188)

> (4) DNA from a stain in a cutting of the green T-shirt worn by the assailant matched the DNA profile of the victim. (T.T. 259- 261)

Considering the wealth of evidence pointing to the Defendant's guilt, this Court cannot say counsel was deficient in failing to seek records of a possible telephone call made from the Defendant to his girlfriend.

(Order denying relief at p. 8-9). The state trial court reasonably applied the *Strickland* standard in concluding trial counsel's performance was not deficient.

Ground five does not warrant habeas corpus relief.

Ground Six

Houston complains his counsel was ineffective for failing to object to the absence of African Americans on the jury and failing to move for a change of venue. Again, the trial court reasonably denied this claim, finding as follows:

Defendant claims counsel was ineffective for failing to object to no blacks on his jury venire and failing to move for a change of venue. Defendant alleges that he was prejudiced "because white people would not be able to think from a black man's perspective. With blacks on the jury there would have been an equal balance of racial reasoning." (Motion at p. 12) The Defendant has attached a list of population by races from the 2000 census and claims that, in terms of numbers, blacks are dominated by whites in Manatee County. He claims counsel should have requested two separate jury venire lists by race and the venire should have been selected from each list. He further avers counsel should have sought a change of venue, while at the same time acknowledging that according to the statistics, the chances of the venire being different in neighboring counties "might be slim." (Motion at p. 12)

The Defendant's claims are without merit. First, the legislature has the right to prescribe the qualifications for juror selection. *See Reed v. State*, 292 So. 2d 7 (Fla. 1974). Those qualifications are set out in section 40.01, Florida Statutes. Second, a motion to quash a panel or venire goes to irregularities or illegalities in selecting names for jury service or in the drawing or impaneling of a petit jury. *See Chance v. State*, 155 So. 2d 663 (Fla. 1934). As such, the motion to quash must be heard before trial. *See Lake v. State*, 129 So. 833 (Fla. 1930).

In the absence of evidence to the contrary, there is a presumption that selecting officials acted properly in compiling jury lists. *See Porter v. State*, 160 So. 2d 104 (Fla. 1964). Contrary to the Defendant's suggestion, no member of any race or group has the right to be included on any particular list or venire. *Id.* at 109. Likewise, no identifiable segment of the population (race, gender, etc.) is entitled to proportional representation on jury lists or juries. *Id.* In this case, the Defendant has failed to demonstrate any legal or factual basis upon which his counsel could have moved to quash the jury venire, much less move for a change of venue. Therefore, his claim is rejected.

(Order denying relief at pp. 10-11).

The state trial court's rejection of this claim was neither contrary to nor an unreasonable application of United States Supreme Court precedent. "[A] defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn ... " *Swain v. Alabama*, 380 U.S. 202 (1965). "Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group..." *Id.* The Fifth Circuit, citing *Swain*, held that "a jury list drawn objectively, mechanically, and at random from the entire voting list of a county is entitled to the presumption that it is drawn from a source which is a fairly representative cross-section of the inhabitants of that jurisdiction." *Thompson v. Sheppard*, 490 F.2d 830, 833 (5th Cir. 1974). The court in *Thompson* noted that the presumption is rebuttable; however "the challenger must carry the burden of showing that the product of such a procedure is, in fact, constitutionally defective." *Id.* As the state court correctly concluded in this case, Houston failed to carry his burden. Accordingly, in the absence of such evidence, Houston cannot demonstrate that his attorney was ineffective for failing to object to the jury panel.

Ground six does not warrant habeas corpus relief.

Ground Seven

Houston alleges the prosecutor failed to notify him of deposition proceedings and have him summoned to appear for depositions. As factual support, Houston alleges "the State neither notified Houston of the deposition proceedings nor arranged for him to be present. Houston alleges further that he "did not know he had the right to be present during depositions, and at no time did he waive his right to be present. Had Houston been notified and been present,

Houston would have been able to assist counsel with questioning on those significant matters privy to only him the witnesses." (See § 2254 petition at p. 14).

Houston raised this claim in his rule 3.850 motion, and it was reasonably denied by the state trial court because under Florida law, a defendant does not have an unconditional right to be present at pretrial discovery depositions. The state trial court held in the order denying postconviction relief, "Again, as in Ground Three above, the Defendant cites to Florida Rules of Criminal Procedure 3.190(j) in support of this claim. As set forth under Ground Three above, however, the Defendant had no unconditional right to be physically present during the taking of discovery depositions in this case. Therefore, his claim is rejected." (Order denying relief at p. 11).

Although the state court addressed this claim on the merits, the claim could have been dismissed on procedural grounds, because it concerns an issue which should have been raised on direct appeal and therefore is not cognizable in a collateral Rule 3.850 proceeding. *See Spencer v. State*, 842 So. 2d 52, 60 (Fla. 2003)("We conclude that Spencer's substantive claims of prosecutorial misconduct could and should have been raised on direct appeal and thus are procedurally barred from consideration in a postconviction motion").

Ground seven does not warrant habeas corpus relief.

Ground Eight

Houston faults his trial attorney for failing to depose an allegedly exculpatory witness named "Bernard." The state trial court rejected this claim:

> **Ground Eight**: Defendant claims counsel was ineffective for failing to depose a person by the name of "Bernard" whom the Defendant contends could have provided exculpatory evidence for his defense. Defendant claims that during Sandy Pate's deposition she indicated Bernard was in the house before she entered the victim's house. According to the Defendant, Pate testified that

16

Bernard repeatedly asked the victim, "Who did this?" Defendant contends that during this time, the elderly and severely beaten victim was "engaged in reflective thought" and, while the victim did not answer Bernard, when Ms. Pate stated, "Don't tell me Brent did this," the victim then identified the Defendant as her attacker. Defendant claims counsel was ineffective in not deposing Bernard. He maintains that Bernard's repeated questions of the victim would have offered some proof that she "was in the state of the reflective thought process."

The essence of the Defendant's claim is that Bernard's testimony would have swayed the Court to disallow the hearsay statements of the victim via Ms. Pate and others during trial. To the extent that the Defendant seeks to revisit the Court's trial ruling on excited utterances, his claim is rejected as set out in Ground Nine below.

The Court also rejects the claim that counsel was deficient for failing to depose Bernard because the Defendant's recitation of the "facts" does not comport with the testimony received at trial. Regardless of what Ms. Pate's deposition might reflect, this deposition was not introduced as evidence at trial. Pate's testimony was that she, Ms. Epps, Rosa and Bernard entered the victim's home at the same time. (T.T. 49-50, 68-69) Her testimony coincides with that of Ms. Epps (T.T. 77-78) and Rosa McNeil (T.T. 92-93), who also testified that they entered the victim's house together.

Rather than engaging in a reflective thought process, all witnesses testified that the victim was found initially lying on the floor, her face bloody, her clothing torn, and she was shaking and upset. (T.T. 61, 77, 84) As to the excited utterances allowed by the Court at trial, Ms. Pate testified that she immediately said to the victim, "Don't tell me Brent did this," whereupon the victim confirmed that Brent had attacked her, choking and beating her and asking her for money. (T.T. 61) Rosa McNeil also testified that upon entering the residence, she said, "mama, tell me who did this and she said Brent." (T.T. 89) McNeil stated she believed the victim made this statement to her before she told Ms. Pate that Brent had attacked her. (T.T. 90)

None of these witnesses testified that Bernard asked over and over again who attacked the victim, nor were any of the witnesses asked whether Bernard had asked any questions of the victim. In fact, the only action Ms. Pate testified to at trial was that Bernard and Rosa helped the victim to a chair after they all entered her house. (T.T. 61) Otherwise, all three witnesses were in agreement that they all entered the house at the same time. The Defendant's present claim is premised on the allegation that Bernard was in the house before anyone else; this claim is simply not borne out by the evidence. Therefore, the Court does not find that counsel was deficient for failing to depose Bernard or that Bernard had any "proof" to offer of the victim's conscience reflection before stating that the Defendant was her attacker.

17

(Order denying relief at pp. 12-13). The state court's factual findings are amply supported in the record, and the legal analysis of ground eight is sound. The state trial court's objectively reasonable application of the *Strickland* standard mandates denial of this claim.

Ground eight does not warrant habeas corpus relief.

Ground Nine

Houston claims the trial court erred in allowing the hearsay statements from Ms. Myers into evidence under the excited utterance exception to Florida's hearsay rule. This claim must be dismissed for at least two reasons.

First, Houston did not present this claim in the state court or in this Court as a federal constitutional issue. Rather, Houston has argued throughout that the trial court abused its discretion or committed reversible error in allowing hearsay evidence which does not comport with the requirements of state law. An examination of the claim in state court and in this Court shows that Houston argued only state case law and statutory law in the trial court and on appeal, and did not allege he was denied due process or a fair trial as a result of the trial court's ruling that the hearsay statements were admissible under Florida's hearsay rule. (See Initial Brief of Appellant [Respondent's Ex. 1] at pp. 12-14; § 2254 petition at p. 17).

It is well-established that a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  A claim that an evidentiary ruling was allegedly incorrect under state law is not a basis for habeas relief. *Estelle*, at 72 ("Nor do our habeas powers allow us to reverse [a petitioner's] conviction based

18

on a belief that the trial judge incorrectly interpreted the California Evidence Code in ruling that the prior injury evidence was admissible as bad acts evidence in this case.") On habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Even when a petition which actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976).[2]

Second, this claim is procedurally barred in its entirety because Houston did not preserve a constitutional claim regarding the subject testimony for direct review by timely objecting to the hearsay testimony on constitutional grounds. Nor did Houston fairly present a federal claim concerning the trial court's ruling on direct appeal. His raised his evidentiary issue in state law terms. Pursuant to *Duncan v. Henry, supra*, briefing an issue as a matter of state law is not sufficient to exhaust a federal claim on the same grounds.  513 U.S. at 366 ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.")

Before seeking federal habeas relief, a state prisoner to satisfy the exhaustion requirement, 28 U.S.C. § 2254(b)(1), must "fairly present" his claim in each appropriate state court to alert that court to the claim's federal nature. *See Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004). By not timely raising the constitutional dimension of his ground at trial in order to

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

preserve such for review and also raising a constitutional claim on appeal, Houston deprived the state courts of full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

Dismissal for failure to exhaust is not appropriate because this ground is procedurally barred under state law. Because Houston could have, if at all, preserved a constitutional claim regarding the hearsay evidence and urged constitutional error on appeal, he was precluded from doing so collaterally in a rule 3.850 motion. Postconviction motions cannot be used as a second appeal for issues that were or could have been raised on direct appeal. *Parker v. State*, 611 So. 2d 1224 (Fla. 1992).[3]

Claims that are procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent" contemplated in *Murray v. Carrier*, 477 U.S. at 496. Cause must ordinarily be something external to the defense. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995), and allegations of cause are subject to default. *See Edwards v. Carpenter*, 529 U.S. 446 at 453 (ineffective assistance of counsel claim asserted as cause for procedural default of another federal claim could itself be procedurally defaulted).

Houston did not show valid cause in the state courts to excuse his default. Any further allegation of cause is now procedurally barred by the two-year limitation of rule 3.850, see

---

[3] This Circuit has long recognized this aspect of Florida law. *See Sullivan v. Wainwright*, 695 F.2d 1306, 1310 (11th Cir.)(claims that could have been or should have been preserved at trial and raised on direct appeal and were not are procedurally barred), *cert. denied*, 464 U.S. 922 (1983); *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir.)(under Florida law, an issue which could have been raised on appeal may not be reviewed in a rule 3.850 motion), *cert. denied*, 498 U.S. 832 (1990).

*Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir.)(recognizing and applying two-year bar of rule 3.850), *cert. denied*, 498 U.S. 834 (1990), and the state's successive petition doctrine. *E.g., Foster v. State*, 614 So. 2d 455, 458 (Fla. 1992); *Zeigler v. State,* 632 So. 2d 48, 51 (Fla. 1993).

Even if, arguendo, he could show valid cause, Houston cannot avoid his default. Houston does not allege and meet the prejudice component of the *Wainwright v. Sykes* test. Moreover, Houston does not qualify for the fundamental miscarriage of justice exception. He has no new and reliable evidence of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995).

Further and alternatively, Houston does not make a threshold showing of entitlement to relief under the AEDPA standards. Houston cannot show the state decision was an unreasonable application of established Supreme Court precedent governing his claim. Houston points to no Supreme Court precedent that clearly establishes that it violates due process for a state court to admit into evidence hearsay statements of the victim under the "excited utterance" exception to the state's hearsay rule. See *Powell v. Sec'y*, 131 Fed. Appx. 146 (11th Cir. 2005)(where no Supreme Court precedent is on point, court cannot say a state court's conclusion is contrary to clearly established federal law as determined by Supreme Court).

Moreover, generally, state court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *See Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197 (1977)); *see also Spencer v. Texas*, 385 U.S. at 563-64. Federal habeas corpus relief is not available to correct an error of state law unless so egregious as to deny due process or equal protection. *Pulley v. Harris*, 465

21

U.S. 37 (1984). Admission of prejudicial evidence may support habeas corpus relief only where the evidence is "material in the sense of a crucial, critical, highly significant factor." *Osborne v. Wainwright*, 720 F. 2d 1237, 1238-39 (11th Cir. 1983)). Houston's case does not implicate such concerns.

During trial, defense counsel objected to the State's use of the hearsay testimony regarding the victim's identification of Houston as the perpetrator.[4]  During the testimony of witnesses Sandra Pate, Rosa McNeil, and Officer Kauffman, the witnesses proffered their testimony outside the presence of the jury, defense counsel conducted cross-examination and then argued for exclusion of the statements pursuant to Fla. R. Crim. P. 90.803(2), and the court overruled counsel's objections in each instance. (Vol. 2: T 52-60, 84-88, 102-109). The State's answer brief on direct appeal summarized the evidence adduced at trial which supports the trial court's ruling:

> The statements were excited utterances, pursuant to Section 90.803(2), Fla. Stat. (1999). *Jackson v. State*, 419 So. 2d 394 (Fla. 4th DCA 1982), provides the elements for this exception as follows:
>
> > (1) there must be an event startling enough to cause nervous excitement;
> >
> > (2) the statement must have been made before there was time to contrive or misrepresent;
> >
> > (3) the statement must be made while the person is under the stress of excitement caused by the event.
>
> Here, the event is clearly sufficient to cause nervous excitement, and there was no time to contrive or misrepresent. Further, a  sufficient predicate was laid establishing that victim Mamie Myers was still excited at the time the statement was made.

---

[4] The victim, Mamie Myers, was unavailable to testify because she passed away prior to trial, due to causes not directly related to the serious injuries sustained from the aggravated battery. (Vol. 2: T 28).

22

Sandra Pate testified that she saw Appellant go inside the victim Mamie Myers house. Ms. Myers was the 87 year old grandmother of Appellant. (V. 2: T. 48). She saw Appellant leave about 20 minutes later looking nervous and walking real fast. (V. 2: T. 49). She saw neighbor Dorothy Epps heading to the victim's house and joined her and Rosa McNeil. (V. 2: T. 50). They opened Ms. Myers door and saw her crawling on the floor. (V. 2: T. 50). Ms. Myers was bloody and her eye was hanging out. There was blood everywhere, the room was ransacked and her jewelry box and dresser drawers were thrown around. (V. 2: T. 51). Ms. Myers was scared, shaking and crying. (V. 2: T. 52). Ms. Pate believed about 5 minutes passed from the time she saw Appellant run off and saw Ms. Myers. (V. 2: T. 54). Ms. Pate asked her what happened, said please tell me it wasn't Appellant who did this, and she said it was Brent that did this. (V. 2: T. 55). She said he wanted money and choked me. (V. 2: T. 57). The trial court properly admitted such statements as excited utterances. (V. 2: T. 60).

Dorothy Epps similarly testified she saw a man running past her window and she immediately ran to Ms. Myers house. She did not answer the door. (V. 2: T. 76). Her screen and window were bent. She was unable to open the door and got the victim's granddaughter Rosalie to open the door. They saw the victim lying on the floor. (V. 2: T. 77).

Rosa McNeil, the victim's granddaughter, testified Ms. Epps came to get her, and they went to her grandmother's house. She opened the door, and Ms. Myers was laying on the floor, with blood on her face. (V. 2: T. 82). Her eye was hanging, and she was bloody. (V. 2: T. 83). Ms. Myers said Brent was looking for money and did this to her. (V. 2: T. 86, 89). It took Ms. McNeil approximately 3 minutes to reach her grandmother's house from the time Ms. Epps came to get her. (V. 2: T. 84). The victim was upset and shaken. (V. 2: T. 87). Once again the court admitted the statement as an excited utterance. (V. 2: T. 88).

Officer Dwayne Kauffman testified he was dispatched to the victim's residence at 6:31 P.M. and arrived 2 minutes later. (V. 2: T. 99). Ms. Myers had blood all over her face and the floor. She was moaning and in great pain. (V. 2: T. 101). He questioned her about 7 minutes after he arrived. (V. 2: T. 102). She was upset and bleeding. He asked her who did this to her and she responded her grandson Brent Houston did this. (V. 2: T. 111). The trial court again admitted such statement as an excited utterance finding the length of time was not sufficient for her to reflect and change her story. (V. 2: T. 109). The hearsay statements were properly admitted as excited utterances. Further, the statements also fall under the first complaint exception. *McDonald v. State*, 578 So. 2d 371 (Fla. 1st DCA), *review denied*, 587 So. 2d 1328 (Fla. 1991)(the testimony of the friend of a sexual battery victim was admissible under the "first complaint" exception to the hearsay rule and as an excited utterance).

(Answer Brief of Appellee at pp. 2-4).

23

Finally, even if Houston could overcome the procedural hurdles sustained by his failure to preserve and raise this claim in the state and federal courts as a federal constitutional issue, he would not be entitled to relief because any error in the admission of the hearsay statements was harmless. As this is a 28 U.S.C. § 2254 habeas case, it is properly analyzed under the harmless error standard set forth in *Brecht v. Abrahamson,* 507 U.S. 619 (1993). An error requires habeas relief only if it "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750 (1946)).

In this case, given the overwhelming evidence against Houston, there is no possibility that admission of the hearsay statements had a "substantial and injurious effect or influence" in the jury's decision. As emphasized by the state court in the order denying postconviction relief, this evidence included, among other things: Sandra Pate testified that she saw Houston, wearing a green T-shirt and blue pants, at the victim's front window, and saw Houston enter the victim's house and later leave (Vol. 2: T 47-48); the victim's neighbor, Dorothy Epps, testified she saw a black male, wearing a green shirt and jeans, hurry by her house, coming from the direction of the victim's residence, and also observed the bent-up screen on the victim's window (Vol. 2: T 75-77); Sergeant Mike Stinson and Detective Jerome Waiters discovered jeans and a green T-shirt, a black nylon wallet containing Houston's driver's license, and a pair of socks in an area between the victim's house and Ms. Golfin's house (Vol. 3: T 162-184); the officers testified that in the pocket of the jeans, they discovered a car key, which was later found to work in the doors and trunk of Houston's vehicle. (Vol 3: T 187); most important, DNA from a stain in a cutting of the green T-shirt worn by the assailant matched the DNA profile of the victim. (Vol. 3: T 259-261).

Ground nine does not warrant habeas corpus relief.

Ground Ten

Houston alleges his appellate counsel was ineffective for failing to raise on direct appeal the issue that his written judgment incorrectly reflects that the attempted robbery is a second-degree felony. Houston raised this claim in his petition for writ of habeas corpus in the state appellate court and was granted relief to the extent the appellate court directed the judgment to be corrected to show the attempted robbery is a third-degree, rather than a second-degree felony. *See Houston v. State*, 907 So. 2d 527 (Fla. 2d DCA 2005). Thus, Houston has already received the relief he requested and this claim is moot.

Ground ten does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Houston's petition for writ of habeas corpus is denied, with prejudice.  The Clerk is directed to enter judgment against Houston and to close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented

25

were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on May 9, 2007.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Brent M. Houston

26